FILED
2022 JAN 19
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DIANE MARTINEAU, | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE** |
| Plaintiff, | |
| v. | |
| KEVIN CURRUTT; NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY; MUTUAL TRUST LIFE INSURANCE COMPANY; and JOHN DOES 1–10, | Case No. 1:21-cv-00045-JNP-DBP |
| | District Judge Jill N. Parrish |
| Defendants. | |

Plaintiff Diane Martineau is a licensed life insurance agent who sold whole life insurance policies to Abigail Buchmiller and Amanda Roseburg (collectively, "the sisters"). The sisters subsequently cancelled their policies, which allegedly caused Martineau to lose significant commissions. Martineau sued Defendant Kevin Currutt, a life insurance agent for Northwestern Mutual Life Insurance Company ("Northwestern"), for tortious interference with business relations for his alleged role in the cancellations, as well as for defamation per se and false light. Martineau also sued Northwestern for vicarious liability.[1]

---

[1] Martineau also sued Mutual Trust Life Insurance Company ("MTL") for negligence. However, before this case was removed to federal court, Martineau filed a motion in state court to amend her complaint and in that motion represented that "[u]pon the complaint being amended to include Mr. Currutt and Northwestern, [she] has agreed to dismiss Defendant Mutual Trust Life Insurance Company from the case." ECF No. 5-34 ¶ 5. Although the motion to amend was granted, ECF No. 5-39, the amended complaint—at least on its face—still includes MTL as a defendant, and the court is not aware of any state court order dismissing MTL from this case. Accordingly, as far as the court is concerned, Martineau's claim against MTL remains a live controversy. Regardless, because Defendants' Motion to Dismiss does not substantively address Martineau's negligence claim against MTL, the court does not consider or discuss that claim any further.

1

Before the court is Currutt and Northwestern's (collectively, "Defendants") Motion to Dismiss for Failure to State a Claim (ECF No. 16). For the reasons set forth herein, the court GRANTS Defendants' Motion to Dismiss WITHOUT PREJUDICE.

## BACKGROUND[2]

Martineau is a licensed life insurance agent. In late 2019, Martineau, acting as an agent for Mutual Trust Life Insurance Company ("MTL"), sold whole life insurance policies to the sisters. These policies were "specially-designed whole life insurance policies with immediate access to a high percentage of cash value, guaranteed growth and stability." ECF No. 5-41 ¶ 20. Consequently, the policies were expensive, with the sisters hoping to "mak[e] monthly premium payments of $800,000 into the policies within the year." *Id.* ¶ 27. Martineau's projected commissions from the sale of these and related policies were "approximately $2,250,000." *Id.* ¶ 30.

One feature of the policies was a "free-look" period of 30 days, during which time the sisters could cancel their policies and "receive a refund of their fully paid premium to that point without any penalties from MTL." *Id.* ¶ 39. Although the sisters did not cancel their policies during the free-look period, in or around February 2020, the sisters "began conversing with Currutt of Northwestern" after the sisters were referred to him by their business bank. *Id.* ¶ 41.

"At some point prior to February 18, 2020, Currutt commenced a campaign to figure out how to cancel Buchmiller's and Roseburg's respective MTL policies without incurring any penalties while receiving a full refund of the premium payments they made." *Id.* ¶ 42. "This campaign entailed at least three separate phone calls [during which] Currutt stated that he was calling on behalf of [the sisters]." *Id.* In addition, Currutt advised and instructed the sisters to send

---

[2] "The facts are recited from the complaint on a motion to dismiss, but the court makes no findings of facts as to such allegations." *See Spence v. Basic Rsch.*, No. 2:16-cv-925-CW, 2017 U.S. Dist. LEXIS 85175, at *2 n.1 (D. Utah May 31, 2017).

to MTL "their unsigned policy delivery receipt documents" and to claim "that they had never signed the policies" and, therefore, were entitled to a full refund. *Id.* ¶ 50. However, this ploy was unsuccessful because MTL "already had in its possession copies of the policies signed by" the sisters. *Id.*

Then, on or around March 10, 2020, Currutt and the sisters contacted MTL and accused Martineau of "persaud[ing] Buchmiller and Roseburg to purchase the insurance policies with unethical behavior and by falsely representing the features of the life insurance policies and defrauding Buchmiller and Roseburg." *Id.* ¶ 80. But, "[b]y this time, MTL was familiar with Currutt's repeated fishing inquiries." *Id.* ¶ 54. Thus, when Mark Creighton, the regional vice president for MTL, became aware of Currutt's accusations regarding Martineau and the sisters' efforts to cancel their policies, he "decided that [the] policies should not yet be canceled because [he] hoped that [Martineau] could work through the issues with Buchmiller and Roseburg." *Id.* ¶ 66. Despite Creighton's decision to postpone cancellation of the sisters' policies, the policies were cancelled as "free-look" cancellations on March 17, 2020 "[d]ue to a miscommunication internally at MTL." *Id.* ¶ 67.

Based on the foregoing, Martineau sued Currutt for tortious interference with business relations, defamation per se, and false light. Martineau also sued Northwestern for vicarious liability under a theory of respondeat superior.[3] Defendants moved to dismiss all of these claims under Federal Rule of Civil Procedure 12(b)(6).

---

[3] The sisters were previously also defendants in this action, but they reached a settlement agreement with Martineau and have since been dismissed from the lawsuit. *See* ECF No. 5-16.

**LEGAL STANDARD**

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the plaintiff fails to "state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citation omitted). Thus, when considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

A complaint survives a motion to dismiss for failure to state a claim when the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Indeed, the complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**ANALYSIS**

Defendants move to dismiss Martineau's claims under Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Martineau's claims fail as a matter of law because (1) the allegedly defamatory statement was qualifiedly privileged; (2) the subject statement is not actionable as defamatory; and (3) the allegedly defamatory statement—as well as Currutt's other conduct—was not the legal cause of Martineau's alleged damages. Because the court agrees that the subject

4

statement was not defamatory and that Martineau has failed to allege that Defendants' alleged tortious interference injured her, the court only addresses Defendants' second and third arguments and dismisses Martineau's defamation per se and tortious interference with business relations claims on those bases.[4]

## I.    Whether the Allegedly Defamatory Statement is Actionable

Defendants argue that the alleged defamatory statement was not defamatory because it was a statement of opinion that is incapable of being verified. In particular, Defendants assert that Currutt's alleged statement that Martineau "persuaded Buchmiller and Roseburg to purchase the insurance policies with *unethical behavior*," ECF No. 5-41 ¶ 80 (emphasis added), was not defamatory "because there are no objective criteria from which to determine whether [Martineau] had acted unethically," ECF No. 16 at 13. Defendants further argue that the allegedly defamatory statement was "merely 'rhetorical hyperbole'"—or a "vigorous epithet[]"—"which is not actionable because [it was] not 'imparting knowledge of actual facts to the [listener].'" ECF No. 30 at 7 (quoting *Westmont Residential LLC v. Buttars*, 340 P.3d 183, 189 (Utah Ct. App. 2014)). Indeed, according to Defendants, Martineau "merely pleads an opinion, which cannot be the basis of a claim for defamation." ECF No. 16 at 14.

---

[4] At oral argument, Martineau's attorney conceded that the false light claim against Currutt should be dismissed because Martineau failed to allege—and has no evidence—that Currutt's alleged statement "placed [Martineau] *before the public* in a false light," which is a required element for a false light claim under Utah law. *See Jacob v. Bezzant*, 212 P.3d 535, 544 (Utah 2009) (emphasis added). Indeed, it would be difficult for Martineau to maintain that the statement was "made public" or has "become one of public knowledge" when, as Martineau's attorney acknowledged, Martineau does not even know what exactly Currutt stated to MTL about her. *See Shattuck-Owen v. Snowbird Corp.*, 16 P.3d 555, 558 (Utah 2000) (explaining that "[p]ublic disclosure 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge" (citation omitted)). Thus, the court dismisses Martineau's false light claim.

In response, Martineau first argues that "[t]he statement[] attributed to Currutt in the Amended Complaint" is defamatory because the statement—which accused Martineau "of lying to Buchmiller and Roseburg about the features and benefits of the policies in an effort to persuade them to purchase the policies"—"impeached [Martineau's] honesty, integrity, virtue, or reputation." ECF No. 21 at 8–9. Martineau further argues that, contrary to Defendants' assertion, the allegedly defamatory statement is an objectively verifiable statement of fact. Specifically, Martineau focuses on the allegation that Currutt told MTL that Martineau had "provided false information to Buchmiller and Roseburg about the policies. Such a statement is clearly objectively verifiable." *Id.* at 10–11.

Martineau further asserts that the court must consider the context in which the alleged statement was made. Martineau indicates that the fact that "Buchmiller and Roseburg were attempting, by any means necessary, to cancel their policies without losing the premiums they had already paid" and that Currutt "was incentivized to help Buchmiller and Roseburg escape their policies because he doubtless wanted to sell other products to them" supports her contention that the alleged statement was defamatory. *Id.* at 10. The court disagrees.

> Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule. At its core, an action for defamation is intended to protect an individual's interest in maintaining a good reputation. The guiding principle in determining whether a statement is defamatory is the statement's tendency to injure a reputation in the eyes of its audience.

*Spencer v. Glover*, 397 P.3d 780, 784 (Utah Ct. App. 2017) (internal quotation marks and citations omitted). "Because the existence of defamatory content is a matter of law, a reviewing court can, and must, conduct a context-driven assessment of the alleged defamatory statement and reach an independent conclusion about the statement's susceptibility to a defamatory interpretation." *O'Connor v. Burningham*, 165 P.3d 1214, 1222 (Utah 2007); *see also West v. Thomson*

*Newspapers*, 872 P.2d 999, 1009 (Utah 1994) ("A court simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made, giving the words their most common and accepted meaning."). Moreover, when a district court determines whether a statement is susceptible to a defamatory meaning, it does not construe all factual inferences in favor of the nonmoving party, as it would in other cases. *See Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1233 (D. Utah 2018) (citing *O'Connor*, 165 P.3d at 1221–22); *see also West*, 872 P.2d at 1009 n.15 (holding that resolving all ambiguities in an alleged defamatory statement in favor of the plaintiff "effectively eviscerates the court's responsibility to determine initially if the statement is defamatory as a matter of law").

Here, the court concludes that, when viewed in context, Currutt's alleged statement is not susceptible to a defamatory meaning. According to the allegations in the amended complaint, the alleged statement was made in the midst of "a campaign to figure out how to cancel Buchmiller's and Roseburg's respective MTL policies without incurring any penalties while receiving a full refund of the premium payments they made." ECF No. 5-41 ¶ 42. As part of this campaign, Currutt allegedly "called MTL on several different occasions seeking ways to cancel the policies on behalf of Buchmiller and Roseburg." *Id.* ¶ 58; *see also id.* ¶ 48 ("MTL notified [Martineau] on [March 6, 2020] of Roseburg's email and of several incoming calls from Currutt representing Roseburg asking for cancellation process and procedures at MTL."); *id.* ¶ 49 ("Buchmiller, Roseburg and Currutt made several attempts to have the policies cancelled."). In addition, Buchmiller and Roseburg allegedly attempted several times to have their policies cancelled, including by attempting "to defraud MTL by contacting it and telling its representatives that they had never signed the policies"—even though they had signed them—"and[,] therefore, were entitled to a

refund of their premium payments." *See id.* ¶¶ 44, 48, 49, 50, 73. Thus, by the time Currutt made the allegedly defamatory statement, "MTL was familiar with Currutt's repeated fishing inquiries." *Id.* ¶ 54.

Although Currutt's alleged statement that Martineau "had persuaded Buchmiller and Roseburg to purchase the insurance policies with unethical behavior and by falsely representing the features of the life insurance policies and defrauding [them]," *id.* ¶ 80, "impeache[d] [Martineau's] honesty, integrity, virtue, or reputation," it did not "injure [Martineau's] reputation in the eyes of its audience," *see Spencer*, 397 P.3d at 784. Indeed, the reasonable inference from Martineau's amended complaint and her opposition to this motion is that MTL recognized that the statement was part of Currutt and the sisters' "repeated fishing inquiries" to cancel the sisters' policies "by any means necessary." ECF Nos. 5-41 ¶ 54, 21 at 10. Thus, the statement—from a competing life insurance agent who "was incentivized to help Buchmiller and Roseburg escape their policies because he doubtless wanted to sell other products to them," ECF No. 21 at 10— "did not present a likelihood the audience would form a personal animus towards [Martineau]. In colloquial terms, [Currutt's] statements would necessarily be taken with a grain of salt." *See Mast v. Overson*, 971 P.2d 928, 932 (Utah Ct. App. 1998). In fact, the allegations in the amended complaint establish that MTL did not believe Currutt's alleged statement and confirm that MTL did not act on it. ECF No. 5-41 ¶¶ 54, 66–67. Accordingly, the court concludes that Currutt's alleged statement is not susceptible to a defamatory meaning as a matter of law.

Furthermore, the court notes an alternative basis for dismissing Martineau's defamation per se claim against Currutt. Specifically, Martineau's amended complaint is filled with inconsistencies regarding who said what to MTL. At some points in the amended complaint, the individual who made the allegedly defamatory statement is unspecified. *See, e.g.*, *id.* ¶ 54 ("On

March 10th during a conversation with Mark Creighton, [Martineau] was informed of a 3rd party calling for information on how to cancel for MTL client Roseburg. During this conversation, Creighton received an email informing him that Buchmiller, Roseburg, and Currutt had called in together with allegations of 'unethical behavior and inaccurate information by agent.'"); *id.* ¶ 59 ("On March 10th, [Martineau] was notified by an MTL representative that Buchmiller, and Roseburg, and [Currutt] had joined on a call to MTL to make charges of 'unethical behavior and inaccurate information by agent.'"). At other points, Martineau alleges that it was actually the sisters who made the allegedly defamatory statement. *See id.* ("When [Martineau] was made aware of the *allegations by Buchmiller and Roseburg*, she contacted MTL to obtain additional information regarding *the claims made by Buchmiller and Roseburg* and the documents surrounding Buchmiller's and Roseburg's purchases of the policies." (emphasis added)); *id.* ¶ 75 ("Secondly, Currutt advised and instructed Buchmiller and Roseburg to contact MTL and inform it that [Martineau] had convinced them to purchase the policies with unethical behavior and by making false representations about the features of the policies."). Only when Martineau expressly lays out the allegations underlying her defamation per se claim against Currutt does she allege that it was actually Currutt who made the allegedly defamatory statement. *See id.* ¶ 80 ("In approximately March 2020, *Currutt* published statements both in writing and orally to MTL that [Martineau] had persuaded Buchmiller and Roseburg to purchase the insurance policies with unethical behavior and by falsely representing the features of the life insurance policies and defrauding Buchmiller and Roseburg." (emphasis added)).

"The court need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading." *Bryner v. Utah*, No. 2:08-cv-463-CW-SA, 2010 U.S. Dist. LEXIS 29132, at *16 (D. Utah Mar. 22, 2010); *see also Allied World Nat'l Assur. Co. v. Monavie,*

*Inc.*, No. 2:12-cv-393-DAK, 2013 U.S. Dist. LEXIS 97720, at *12 (D. Utah July 12, 2013) (citing *McKinley Med., LLC v. Medmarc Cas. Ins. Co.*, No. 11-cv-01218-CMA-KMT, at *14 (D. Colo. Mar. 23, 2012), for the proposition that courts "need not accept factual claims that are internally inconsistent"); *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("[W]here [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (citation and internal quotation marks omitted)). When the internally inconsistent allegations in Martineau's amended complaint are disregarded, Martineau's claim that Currutt defamed Martineau falls completely flat. Indeed, there is not even an allegation that Currutt made any statements to MTL about Martineau. Accordingly, the contradictory factual assertions render Martineau's defamation per se claim inherently implausible. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555–56.

Therefore, Martineau's defamation per se claim is dismissed.[5]

---

[5] The court also notes that it is questionable whether Martineau's amended complaint complies with Rule 11. *See* FED. R. CIV. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."). At oral argument, Martineau's counsel acknowledged that Martineau does not know what exactly was said when Currutt and the sisters allegedly contacted MTL, or even who made the allegedly defamatory statement to MTL. The only information that Martineau has regarding who said what to MTL is the result of multiple layers of hearsay, and the uncertainties regarding the critical communication likely explain the inconsistencies throughout the amended complaint that are described above. Because the court dismisses Martineau's claims against Defendants without prejudice, Martineau may seek to refile her complaint. If so, the court urges Martineau to ensure that any subsequent complaint complies with all of the Federal Rules of Civil Procedure and Rule 11 in particular.

## II.      Whether Defendants' Conduct Caused Martineau's Alleged Damages

Defendants argue that Martineau's claims fail because she has failed to plead that the allegedly defamatory statement—or any other conduct by Defendants—caused her alleged damages. Rather, Martineau's amended complaint establishes that the allegedly defamatory statement *was not* the cause of Martineau's alleged damages because Creighton, MTL's regional vice president, "did not believe the supposed defamatory statement and took no negative action based upon it," ECF No. 16 at 15, and the sister's "policies were cancelled '*due to a miscommunication internally at MTL*,'" not due to Currutt's allegedly defamatory statement or other conduct. *Id.* (quoting and adding emphasis to ECF No. 5-41 ¶ 67).

In response, Martineau argues that her claim is for defamation per se and, "according to Utah law, a cause of action for defamation *per se* need not be accompanied by an allegation of damages." ECF No. 21 at 11. Martineau further argues that "the Amended Complaint does demonstrate that the comments and actions by Currutt were the 'legal' cause of [Martineau's] damages" because the sisters' "policies were cancelled as a direct result of Currutt, Buchmiller and Roseburg contacting MTL and claiming that they should be let out of policies despite being beyond the free-look period because [Martineau] had acted unethically and provided them false information." *Id.* at 11–12. Because the court has already dismissed Martineau's defamation per se and false light claims, the court only considers the parties' arguments in the context of Martineau's tortious interference with business relations claim.

"In order to win a tortious interference claim under Utah law, a plaintiff must now prove '(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff.'" *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (citation omitted). Under Utah law, "[t]he improper-means

requirement 'is satisfied where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common-law rules. Commonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'" *SCO Grp., Inc. v. IBM*, 879 F.3d 1062, 1083 (10th Cir. 2018) (internal citations and quotation marks omitted).

Here, Martineau alleges that Currutt tortiously interfered with her business relations by (1) "advis[ing] and instruct[ing] Buchmiller and Roseburg to defraud MTL by contacting it and telling its representatives that they had never signed the policies and[,] therefore, were entitled to a refund of their premium payments" and (2) "advis[ing] and instruct[ing] Buchmiller and Roseburg to contact MTL and inform it that [Martineau] had convinced them to purchase the policies with unethical behavior and by making false representations about the features of the policies." ECF No. 5-41 ¶¶ 73, 75. Because the court has concluded that the allegedly defamatory statement allegedly made to MTL was not defamatory, the court correspondingly concludes that the alleged publication of that statement does not qualify as an improper means under Utah law. Therefore, the court focuses on whether Martineau has sufficiently alleged that she was injured by Currutt's alleged involvement in the sisters' alleged attempt to defraud MTL.[6]

---

[6] The court also notes that it is uncertain whether Currutt's alleged aiding and abetting of the sisters' alleged attempt to defraud MTL qualifies as an improper means under Utah law. Specifically, it is "unclear whether aiding and abetting fraud [is] even a cause of action under Utah law." *See DiTucci v. Ashby*, No. 2:19-cv-277-TC-PMW, 2020 U.S. Dist. LEXIS 46155, at *26 (D. Utah Mar. 16, 2020); *see also Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 n.1 (D. Utah 2017) ("Utah courts have not yet recognized a claim for aiding and abetting fraud."). However, because the court concludes that Martineau has failed to allege that she was injured by Currutt's alleged efforts to aid and abet fraud, the court need not—and does not—determine whether such conduct qualifies as an improper means under Utah law.

Martineau has failed to allege that she was injured by the allegedly fraudulent scheme to cancel the policies. In her amended complaint and opposition to this motion, Martineau acknowledges that the sisters' alleged attempt to defraud MTL was unsuccessful and that MTL did not act on the attempted fraud. *See* ECF No. 5-41 ¶ 50 ("First, Buchmiller and Roseburg separately but nearly simultaneously sent to MTL their unsigned policy delivery receipt documents claiming that they had never signed the policies. The problem with this strategy was that MTL already had in its possession copies of the policies signed by Buchmiller and Roseburg."); ECF No. 21 at 3 ("Currutt's first effort at attempting to have the policies cancelled was instructing Buchmiller and Roseburg to provide to MTL unsigned policy delivery receipt documents claiming they had not signed the same and[,] therefore, they were still within the 30 day free look period. However, MTL already had in its possession the signed policy delivery receipts from Buchmiller and Roseburg, so this strategy failed." (internal citations omitted)). Because Martineau acknowledges that she was not injured by the sisters' alleged attempt to defraud MTL, she cannot plausibly allege that she was injured by Currutt's alleged involvement in that attempt. Because injury is an essential element of a tortious interference claim, *Eldridge*, 345 P.3d at 565, Martineau's tortious interference claim fails and is dismissed.

## III.   Vicarious Liability

Martineau's only claim against Northwestern is for vicarious liability for Currutt's conduct because "[a]t all times relevant herein, Currutt was an agent or employee of Northwestern working within the course and scope of his employment or agency with Northwestern." ECF No. 5-41 ¶ 98. Because the claims against Currutt that gave rise to Northwestern's alleged vicarious liability have been dismissed, the court also dismisses Martineau's vicarious liability claim against Northwestern. *See J. White, L.C. v. Wiseman*, 2:16-cv-01179-DBB-JCB, 2020 U.S. Dist. LEXIS

121908, at *17 (D. Utah July 9, 2020) ("[R]espondeat superior requires an underlying tort to extend liability" from the agent to the principal).

## CONCLUSION AND ORDER

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 16) is GRANTED and Martineau's claims against Defendants are DISMISSED WITHOUT PREJUDICE. Martineau has 21 days from the entry of this order to file an amended complaint.

DATED January 19, 2022.

BY THE COURT

Jill N. Parrish

United States District Court Judge

14